**In re TOWN & COUNTRY HOME NURSING SERVICES, INC., Debtor.**

**TOWN & COUNTRY HOME NURSING SERVICES, INC., Appellant,**

v.

**BLUE CROSS OF CALIFORNIA; Health Care Financing Administration; Blue Cross of America; and Otis Bowen, as Secretary of Health and Human Services, Appellees.**

**BAP No. CC–88–1281 VMoP.**
**Bankruptcy No. SA 85–02781 JR.**
**Adv. No. SA 85–0627 JR.**

United States Bankruptcy Appellate Panel, of the Ninth Circuit.

Argued and Submitted Jan. 19, 1989.

Decided March 30, 1990.

**330**

Carl Grumer, Cooper, Epstein & Hurewitz, Beverly Hills, Cal., for appellant.

Carolyn M. Reynolds, Asst. U.S. Atty., Los Angeles, Cal., for appellees.

Before VOLINN, MOOREMAN and PERRIS, Bankruptcy Judges.

## OPINION

VOLINN, Bankruptcy Judge:

### OVERVIEW

Appellant/debtor Town & Country Home Nursing Services, Inc. ("Town & Country") commenced an adversary proceeding asserting various claims for relief against defendants/appellees Blue Cross of California and Blue Cross of America (jointly referred to as "Blue Cross"), Health Care Financing Administration ("HCFA"), and the Secretary of Health and Human Services ("Secretary"). Town & Country appeals the bankruptcy court's dismissal of two of its claims for relief, which the bankruptcy court dismissed based on the sovereign immunity doctrine. We reverse and hold that the defendants waived sovereign immunity under § 106(a).[1]

Town & Country also appeals from the bankruptcy court's dismissal of HCFA as a party defendant. We affirm the bankruptcy court's dismissal of HCFA because HCFA is not a suable entity.

### FACTS

Town & Country is a provider of in-home nursing services. It entered into a health insurance benefits agreement ("the provider agreement") with the Secretary in 1970, pursuant to the Medicare program. The Medicare program is administered by HCFA, which is part of the Department of Health and Human Services.

Since 1971, Blue Cross has acted as a fiscal intermediary with administrative responsibilities for the program. Town & Country submitted cost reports to Blue Cross at the end of each fiscal year and

---

**1.** Section references refer to the Bankruptcy Code, 11 U.S.C. §§ 101–1330, unless otherwise specified.

was audited from time to time by Blue Cross. In late 1984, Blue Cross asserted that Town & Country had been overpaid approximately $555,000. According to provisions of the Medicare statute and regulations, the Secretary can obtain repayment of any overpayments made to a provider. 42 U.S.C. § 1395g; 42 C.F.R. § 413.64(f) (1987). To resolve the overpayment dispute, Town & Country executed a promissory note on February 27, 1985 in the principal amount of $555,539. The note was made payable to the United States and required payment in monthly installments of not less than $16,835 plus interest.

From November 1984 through September 1985, the defendants offset approximately $21,000 per month against provider payments otherwise due and payable to the debtor. Blue Cross later determined that it had made an error in its calculation of the alleged overpayment and determined that the correct amount should have been $250,-000, rather than $555,539.

Town & Country filed a chapter 11 bankruptcy petition on July 19, 1985. After the case was filed, the defendants continued to offset the amount of the overpayment to which they asserted they were entitled against the provider payments due the debtor, ultimately offsetting the full amount that they claimed the debtor owed.[2]

## PROCEDURAL BACKGROUND

Town & Country initiated an adversary proceeding against defendants Blue Cross of California and HCFA for damages allegedly arising from the events outlined above. The defendants answered and moved for judgment on the pleadings. At a hearing on March 14, 1986, the bankruptcy court ruled that Town & Country had failed to name proper and indispensable parties, and gave Town & Country thirty days to amend its complaint.

On April 29, 1986, Town & Country filed its first amended complaint, adding as additional defendants Blue Cross of America and the Secretary of Health and Human Services. Among the six claims for relief asserted in the first amended complaint, the fourth and fifth are germane to this appeal. In its fourth claim for relief, Town & Country contended that the defendants breached their implied covenant of good faith and fair dealing and their fiduciary duties to Town & Country by compelling it to execute the note and by carrying out the offsets. The fifth claim for relief is for intentional and/or negligent interference with prospective economic advantage, and for unfair business practices under § 17200 *et seq.* of the California Business and Professions Code.

After the debtor filed the first amended complaint, the defendants again moved for judgment on the pleadings on the grounds that the bankruptcy court lacked subject matter jurisdiction and that the amended complaint failed to state a claim upon which relief could be granted. In addition, HCFA asserted that it is not a suable entity and Blue Cross asserted that it is a subcontractor of the Secretary and is entitled to sovereign immunity. The court heard the defendants' motion on October 15, 1987, and subsequently issued a memorandum opinion and order. Defendants then moved for reconsideration and, following a hearing, the court revised its rulings on the issues that are the subject of this appeal, that is, whether sovereign immunity was waived under § 106(a), and whether HCFA may be sued.

In its initial memorandum opinion, the bankruptcy court ruled that the requirements of § 106(a) for a waiver of sovereign immunity had been met with respect to the fourth and fifth claims for relief. However, on reconsideration, the bankruptcy court dismissed those claims based on its conclusion that sovereign immunity was not waived because the defendants had filed no proof of claim. Town & Country appeals the dismissal of those claims.

The bankruptcy court at first denied the motion to dismiss HCFA because it is a governmental unit and sovereign immunity

---

**2.** Section 362(a)(7) precludes post-petition offset without first obtaining relief from stay from the bankruptcy court. The record does not show that the stay was terminated. This issue is mentioned by the parties but not argued on this appeal.

had been waived. But on reconsideration, the court granted the motion to dismiss HCFA on the basis that it is not a suable entity. Town & Country appeals from the dismissal of HCFA.

## ISSUES

1. Did the federal government waive its sovereign immunity as to compulsory counterclaims, pursuant to § 106(a), where the government did not file a formal proof of claim, but asserted and recovered on its claim by offset against payments owed to debtor?

2. Is jurisdiction of the bankruptcy court limited by the judicial review provisions of the Medicare statute, the Tucker Act, and the Federal Tort Claims Act?

3. In the absence of sovereign immunity, is the Health Care Financing Administration a suable entity?

## STANDARD OF REVIEW

This appeal involves interpretation of statutory provisions and issues of constitutional law. We review *de novo* the bankruptcy court's statutory interpretation and other legal conclusions. *In re Klein*, 57 B.R. 818, 819 (9th Cir. BAP 1985).

## DISCUSSION

### A. Sovereign Immunity

■ Under the Eleventh Amendment and the doctrine of sovereign immunity, "[t]he United States, as sovereign, is immune from suit save as it consents to be sued ..., and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607, 613 (1980) (quoting *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058, 1061 (1941)). The defendants assert that the doctrine of sovereign immunity applies to them and precludes the debtor's assertion against them of the fourth and fifth claims for relief in the first amended complaint, absent a waiver of sovereign immunity.

The debtor has not challenged the defendants' assertion that they have standing to assert sovereign immunity, and therefore that issue is not before us. Thus the only issue before us is whether sovereign immunity has been waived.

■ A waiver of sovereign immunity "cannot be implied but must be unequivocally expressed." *Mitchell*, 445 U.S. at 538, 100 S.Ct. at 1351, 63 L.Ed.2d at 613 (quoting *United States v. King*, 395 U.S. 1, 4, 89 S.Ct. 1501, 1502, 23 L.Ed.2d 52, 56 (1969)). "Waivers of immunity must be 'construed strictly in favor of the sovereign,' and not 'enlarge[d] ... beyond what the language requires.'" *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 685–86, 103 S.Ct. 3274, 3277–78, 77 L.Ed.2d 938, 944 (1983) (citations omitted) (quoting *McMahon v. United States*, 342 U.S. 25, 27, 72 S.Ct. 17, 18, 96 L.Ed. 26, 30 (1951); *Eastern Transportation Co. v. United States*, 272 U.S. 675, 686, 47 S.Ct. 289, 291, 71 L.Ed. 472, 475 (1927)). However, this does not mean that waivers of sovereign immunity are to be read overly formalistically or restrictively; intent to waive immunity and the scope of the waiver are ascertained by interpreting the words of the statute in light of the underlying congressional policy. *Franchise Tax Bd. of Cal. v. United States Postal Serv.*, 467 U.S. 512, 521, 104 S.Ct. 2549, 2554, 81 L.Ed.2d 446, 453–54 (1984) (citations omitted).

The debtor asserts that sovereign immunity has been waived under § 106(a), which provides:

> A governmental unit is deemed to have waived sovereign immunity with respect to any claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which such governmental unit's claim arose.

This is an "unequivocally expressed" waiver of sovereign immunity with respect to certain claims by a bankruptcy estate against a governmental unit.[3] By the clear

---

3. *Compare Hoffman v. Conn. Dep't of Income Maintenance*, —— U.S. ——, 109 S.Ct. 2818, 106 L.Ed.2d 76 (1989), in which the Supreme Court in a divided ruling held that § 106(c) did not

terms of the statute, the waiver applies whenever (1) the governmental unit also has a "claim" against the estate, and (2) the estate's claim against the governmental unit "arose out of the same transaction or occurrence out of which such governmental unit's claim arose." *In re Davis*, 20 B.R. 519, 520–21 (Bankr.M.D.Ga.1982); *In re Adirondack Ry. Corp.*, 28 B.R. 251, 257 (Bankr.N.D.N.Y.1983).

Section 101(4) defines a "claim" as including

right to payment, whether or not such right is reduced to judgement, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured....

The defendants admittedly asserted a right to payment against the debtor both before and after this bankruptcy case was commenced. Indeed, the defendants went beyond simple assertion, having enforced the right to payment both before and during this case by setoff against amounts that the defendants owed the debtor and the estate. Thus the defendants cannot now deny that they have a "claim" against the estate. The defendants do not dispute that this right to payment "arose out of the same transaction or occurrence" out of which the estate's fourth and fifth claims for relief arose. Thus as to those claims for relief, we hold that sovereign immunity is deemed waived under § 106(a).

1. Proof of Claim as Prerequisite to Waiver of Sovereign Immunity

 The defendants assert that there has been no waiver of sovereign immunity under § 106(a) because they did not file a proof of claim. That assertion flies in the face of logic. The express language of § 106(a) says nothing about the necessity of the government unit filing a proof of claim in order to trigger the waiver of sovereign immunity. By the clear terms of the statute the waiver is triggered by the existence of the government's "claim," not

the filing of a proof of claim. *In re Inslaw, Inc.*, 76 B.R. 224, 229–30 (Bankr.D.D.C.1987); *Adirondack Ry.*, 28 B.R. at 256; *Davis*, 20 B.R. at 520–21. *Contra In re Prudential Lines, Inc.*, 79 B.R. 167, 180 (Bankr.S.D.N.Y.1987); *In re Neavear*, 16 B.R. 528, 530–31 (Bankr.C.D.Ill.1981), *rev'd*, 674 F.2d 1201 (7th Cir.1982).

The bankruptcy court in *Neavear* held that "[t]he legislative history of section 106 makes it clear that there is a waiver of sovereign immunity only where the United States has filed a claim in bankruptcy." 16 B.R. at 530. That conclusion rested solely on the legislative history that accompanied a pre-enactment draft of § 106, which explicitly conditioned the waiver of sovereign immunity on the government's filing of a proof of claim. *See* 16 B.R. at 530–31; S. 2266, 95th Cong., 2d Sess., § 106(a) (1978); H.R. 8200, 95th Cong., 2d Sess., § 106(a) (1977), U.S.Code Cong. & Admin.News 1978, 5787. As ultimately enacted, however, § 106 omitted any reference to the filing of a proof of claim. Thus the *Neavear* court's reliance on that legislative history was misplaced and we decline to follow its ruling.

The *Prudential Lines* case is distinguishable on its facts. There the government had two potential claims, one of which it had asserted, and one of which it had not yet decided to assert. 79 B.R. at 180. The unasserted claim was the one that arose from transactions or occurrences that also gave rise to a claim by the estate against the government. *Id.* Because the government had not yet asserted this claim, the court held that the claim could still be barred if no proof of claim were filed, and therefore the government had not yet waived sovereign immunity as to any related claims by the estate. *Id.* Here, the defendants have not only asserted the claim in question, but enforced this assertion by offset. The claim against which the defendants effected the offset was an asset of the estate. Thus the offset

contain an unequivocal abrogation of states' sovereign immunity from suits for damage claims arising under the specified sections of the Bankruptcy Code, although the Court recognized the narrower waiver of § 106(a). 109

S.Ct. at 2822, 106 L.Ed.2d at 84. The language of § 106(a) does contain an unequivocal waiver of sovereign immunity, and lacks the ambiguity that the four-justice plurality of the Supreme Court found in the language of § 106(c).

was effectively a distribution of estate assets on account of the defendants' claim.

The purpose of § 106(a) is to prevent the government from receiving a distribution on a claim without subjecting itself to any liability it may have to the estate on a compulsory counterclaim. H.R.Rep. No. 595, 95th Cong., 1st Sess. 317 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 29 (1978), U.S.Code Cong. & Admin.News 1978, 5787, 5815, 6274. *Inslaw*, 76 B.R. at 230; *Davis*, 20 B.R. at 523. Through offset, the defendants achieved the full satisfaction of their claim out of assets of the estate. The threshold requirement in § 106(a) of the existence of a governmental "claim" against the debtor is therefore satisfied, thereby waiving sovereign immunity as to claims by the estate against the defendants arising "out of the same transaction or occurrence."[4]

### 2. Informal Proof of Claim

■ Even if § 106 did condition the waiver of sovereign immunity on the filing of a proof of claim by the governmental unit, the defendants would still have waived sovereign immunity as to the fourth and fifth claims for relief in the first amended complaint. The Ninth Circuit has held that correspondence by a creditor with a bankruptcy trustee which shows an intent to assert a claim against the bankruptcy estate may constitute an informal proof of claim, even though no document is filed with the court. *In re Anderson–Walker Industries, Inc.*, 798 F.2d 1285, 1287–88 (9th Cir.1986); *In re Franciscan Vineyards, Inc.*, 597 F.2d 181, 182–83 (9th Cir. 1979), *cert. denied, Grover v. County of Napa*, 445 U.S. 915, 100 S.Ct. 1274, 63 L.Ed.2d 598 (1980). Such correspondence with a debtor in possession is equivalent to correspondence with a trustee. *In re Sambo's Restaurants, Inc.*, 754 F.2d 811, 815 (9th Cir.1985). These cases held that for a document to constitute an informal proof of claim it must state an explicit demand

showing the nature and amount of the claim against the estate, and evidence an intent to hold the debtor liable. *Anderson–Walker*, 798 F.2d at 1287; *Sambo's*, 754 F.2d at 815; *Franciscan Vineyards*, 597 F.2d at 183.

We conclude that the defendants' affirmative actions after the bankruptcy filing, namely offsetting their claim against estate assets, and giving notice to the debtor of such offset, were the equivalent of asserting an informal proof of claim. Implicit in such actions was the assertion of a claim. The offsetting and notice accomplished more than a mere proof of claim, having actually effected collection of the asserted claim. Since the defendants' action was at least equivalent to the submission of an informal proof of claim, sovereign immunity would be deemed waived even if § 106(a) conditioned the waiver of sovereign immunity on the government's filing of a proof of claim.

### B. Do Applicable Statutory Limits on Judicial Review Preclude Bankruptcy Court Jurisdiction?

■ Defendants also argue that Town & Country's claims are barred by the Medicare statute, which provides an exclusive jurisdictional structure for Medicare disputes and appeals, 42 U.S.C. §§ 1395ii, 1395oo, by the Tucker Act, which gives exclusive jurisdiction to the Court of Claims over actions based on an Act of Congress, 28 U.S.C. § 1491, and by the Federal Tort Claims Act ("FTCA"), which requires the exhaustion of administrative remedies, 28 U.S.C. §§ 1346(b), 2671–2680.

■ The courts have not been unanimous regarding the effect on bankruptcy court jurisdiction of statutory restrictions on judicial review. We hold that the better reasoned position is that where there is an independent basis for bankruptcy court jurisdiction, exhaustion of administrative remedies pursuant to other jurisdictional statutes is not required. *See In re Shelby*

---

**4.** We do not decide whether the mere existence of a governmental claim would serve as a waiver of sovereign immunity if the government takes no action whatsoever to assert its claim, its claim is barred for failure to file a proof of

claim, and the government receives no distribution; in such a case the very existence of a governmental claim could be in question. Those facts are not before us, however.

*County Healthcare Services of AL, Inc.,* 80 B.R. 555, 559–61 (Bankr.N.D.Ga.1987) (Medicare statute and FTCA); *In re Prudential Lines,* 79 B.R. at 183 (FTCA); *In re Inslaw,* 76 B.R. at 233–34 (FTCA). *Contra In re Berger,* 16 B.R. 236, 237–38 (Bankr.S.D.Fla.1981) (Medicare statute). The *Berger* court relied, without analysis, on court of appeals cases from the Fifth Circuit which did not involve Bankruptcy Court jurisdiction. 16 B.R. at 236 (citing *Bussey v. Harris,* 611 F.2d 1001 (5th Cir. 1980); *Pushkin v. Califano,* 600 F.2d 486 (5th Cir.1979)).

In this case, 28 U.S.C. §§ 157 and 1334 and 11 U.S.C. § 106(a) grant the bankruptcy court jurisdiction over the claims in question. The court would have the option of invoking the doctrine of primary jurisdiction where referral to the specialized expertise of an administrative tribunal seemed desireable. *See In re Shelby County Healthcare Services,* 80 B.R. at 562. The jurisdictional prerequisites of nonbankruptcy statutes do not deprive the bankruptcy court of the jurisdiction granted to it under 28 U.S.C. §§ 157 and 1334, and 11 U.S.C. § 106(a).

### C. Is HCFA a Suable Entity?

■ Town & Country contends that if a waiver of sovereign immunity is present, HCFA is subject to suit because in its definitions of "governmental unit," the Bankruptcy Code includes any "instrumentality of the United States." *See* 11 U.S.C. § 101(26). Defendants assert that even if sovereign immunity has been waived, a particular governmental unit must have been congressionally authorized to sue and be sued for it to be a party to a lawsuit, but cited no statutory or case authority in the bankruptcy context.

Bankruptcy courts considering this issue have held that the Internal Revenue Service has no capacity to sue or be sued in bankruptcy court and that the United States is the proper party in tax controversies. *In re Morrell,* 69 B.R. 147, 149 (Bankr.N.D.Cal.1986); *In re Simms,* 33 B.R. 792, 793 (Bankr.N.D.Ga.1983). Both cases rely on *Blackmar v. Guerre,* 342 U.S. 512, 514, 72 S.Ct. 410, 411, 96 L.Ed.

534, 538 (1952) (nonbankruptcy case). Following this authority, even an entity that qualifies as a governmental unit under § 101(26) cannot be sued in bankruptcy court unless that governmental unit has independent statutory authority to sue and be sued. HCFA has no such authorization, thus its dismissal from the adversary proceeding was correct.

### CONCLUSION

Although the government did not file a formal proof of claim, the government's actions in offsetting and giving notice of the offset to Town & Country amounted to the assertion of an informal proof of claim, and were sufficient to establish a governmental claim triggering a waiver of sovereign immunity as to Town & Country's fourth and fifth claims for relief, pursuant to § 106(a).

The limitations on judicial review found in the Medicare statute, the Tucker Act, and the Federal Tort Claims Act do not preclude bankruptcy court jurisdiction over the debtor's claims in question because 28 U.S.C. §§ 157 and 1334 and 11 U.S.C. § 106(a) provide an independent grant of jurisdiction to the bankruptcy court.

HCFA does not have statutory authorization to sue or be sued and was properly dismissed as a party defendant.

Therefore, the bankruptcy court's dismissal of Town & Country's fourth and fifth claims for relief is REVERSED, its dismissal of Health Care Financing Administration as a party is AFFIRMED, and this case is REMANDED for further proceedings consistent with this opinion.

PERRIS, Bankruptcy Judge, concurring:

Although I concur in the result and in most of the Panel's opinion, I do not agree entirely with the majority's analysis of the sovereign immunity issue. I support the majority's reasoning that a proof of claim is not a prerequisite to a waiver of sovereign immunity under § 106(a) where, as in this case, the government has taken actions post petition to assert its claim against the

bankruptcy estate. I do not agree, however, with the majority's conclusion that the actions of the defendants constituted an informal proof of claim. The allegations of the complaint are insufficient to determine if these actions did or did not amount to an informal proof of claim under the standards set forth in *In re Anderson Walker Industries, Inc.*, 798 F.2d 1285, 1287–88 (9th Cir.1986), as there is no allegation that the defendants made an explicit demand showing the nature and amount of their claim against the estate. Thus, to the extent it is necessary to address this issue, I would remand to allow Town & Country the opportunity to allege more specifically the facts underlying any informal proof of claim.